Raymond P. HAYDEN, et al., Plaintiffs,

v.

Jeffrey L. FELDMAN, et al.,
Defendants.

No. 88 Civ. 8048 (JES).

United States District Court,
S.D. New York.

Dec. 11, 1990.

Beigel & Sandler, New York City (Lewis S. Sandler, Bruce M. Rose, of counsel), for plaintiffs.

Davis Polk & Wardwell, New York City (Robert B. Fiske, Jr., Nancy B. Ludmerer and Morris H. Wheeler, of counsel), for defendant Paul, Weiss, Rifkind, Wharton & Garrison.

Shea & Gould, New York City (Michael S. Feldberg, Rory J. Cutaia, Lisa A. Schneider, of counsel), for defendants Jeffrey Feldman, Paul J. Foont, and Cralin defendants.

Debevoise & Plimpton, New York City (Mary Jo White, Edwin G. Schallert, Marian W. Payson, Erica B. Baird, Asst. Gen. Counsel, Price Waterhouse, of counsel), for defendant Price Waterhouse.

Burrows Poster & Franzblau, New York City (Kenneth David Burrows, Stephanie R. Cooper, of counsel), for defendants Ivan Grosz, Richard Josephberg and Joseph Schocken.

Munves, Tanenhaus & Storch, New York City (Steven G. Storch, of counsel), for defendants Hugh Janow and Securities Arbitrage Co., L.P.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs bring the above-captioned securities fraud action pursuant to sections 10(b) & 20(a) of the Securities Exchange Act of 1934, see 15 U.S.C. §§ 78j(b), 78t(a); Rule 10b–5, see 17 C.F.R. 240.10b–5; sections 5, 12(2) and 15 of the Securities Act of 1933, see 15 U.S.C. §§ 77e, 77*l*(2), 77*o*; and the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiffs also allege pendent state-law claims of fraud, negligence and breach of fiduciary duty. Currently before the Court is defendants' joint motion to dismiss plaintiffs' Third Amended Complaint ("Complaint") [1] for failure to particularize the allegations of fraud, see Fed.R. Civ.P. 9(b), and for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). For the reasons that follow, the motion is granted.[2]

## BACKGROUND

The relevant allegations of this lengthy complaint may be simply summarized and of course must be assumed to be true. *See Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir. 1986). Each of the over 100 plaintiffs purchased interests, called "units," in one or more of the fifteen limited partnership defendants ("Cralin partnerships" or "partnerships") offered to the public from 1979 to December 1984. *See* Complaint at ¶ 5. The remaining defendants are the inside defendants, *i.e.,* the individuals who organized, promoted and/or managed the Cralin partnerships and the affiliated corporations controlled by these individuals, see *id.* at ¶ 6(a)–(*o*); and the outside defendants, *i.e.,* the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"), *see id.* at ¶ 6(p), and the accounting firm of Price Waterhouse ("Price"). *See id.* at 6(q).

Plaintiffs allege that they invested in the various partnerships relying on private

1. Although the pleading reviewed herein is denominated plaintiffs' third amended complaint, this is the first motion directed to the pleadings addressed by the Court. According to plaintiffs, the first two amendments merely brought in additional plaintiffs. *See* Plaintiffs' Memorandum of Law in Response to Defendants' Motions to Dismiss ("Plaintiffs' Memo") at 1 n. 1. However, after the defendants informed the Court of their intention to move to dismiss the second amended complaint at a Pre-Motion Conference held on March 17, 1989, the Court granted plaintiffs a final opportunity to amend the complaint substantively before addressing the motion to dismiss. Pursuant thereto, the third amended complaint was filed on April 24, 1989.

2. In view of the Court's determination that the complaint must be dismissed pursuant to Fed.R. Civ.P. 9(b) and 12(b)(6), there is no need to address defendants' contention that all or some claims are barred by the statute of limitations. *See, e.g., Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990); *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.) (en banc), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

placement memoranda ("PPMs") [3], tax opinions and financial statements issued by the defendants which represented that each of the limited partnerships would "act as commodities broker-dealers trading primarily in metals and government-backed securities," *id.* at ¶¶ 5, 8(a), 37(a), and that plaintiffs would be entitled to declare their share of the partnerships' profits as ordinary income and to deduct any losses under the federal tax laws. *Id.* at ¶¶ 4, 37(d).

Plaintiffs contend that these representations were false because the defendants never intended to operate the partnerships as broker-dealers but instead intended to and did operate the partnerships as commodities traders, *see id.* at ¶¶ 8(g), 39(a)–(b), with the result that the Internal Revenue Service ("IRS") disallowed the deductions taken by the plaintiffs and imposed interest and penalties charges. *Id.* at ¶ 39(b). Moreover, plaintiffs allege that defendants looted the partnerships' assets through a series of "sham" monetary transfers between the partnerships and the affiliated corporations in the form of commissions and fees. *See id.* at ¶¶ 8(c)–(f), 40.

Price and Paul Weiss are alleged to have participated in this scheme by preparing the PPMs, tax opinions and financial statements which failed to disclose [4] the true nature of the partnerships and the extent of the inter-entity transfers. *See id.* at

¶¶ 9A, 37, 38, 40, 41, 44–51. Moreover, plaintiffs further allege that the mere association of these firms with the offerings clothed the "scheme" with needed credibility which enhanced the desirability of the investment to the plaintiffs. *Id.* at ¶¶ 9A, 14, 46, 50.[5]

## DISCUSSION

■ To satisfy Fed.R.Civ.P. 9(b), a securities fraud complaint must contain particularized allegations identifying the statements relied on, the respect in which those statements are fraudulent, the time and place of the statements, and the identity of those responsible for the statements. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989).[6] Moreover, although scienter may be pleaded generally, the plaintiff must nevertheless "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Id.* at 12–13.

■ In this case, it is clear, and indeed not disputed, that plaintiffs' reference to the PPMs satisfies their burden of identifying time, place, speaker, and content of the representations at least with respect to the inside defendants. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247–49 (2d Cir.1987). However, the

3. Several financial statements are attached as exhibits to the complaint as are portions of three PPMs and their respective tax opinions. *See* Complaint, Exhibits F, G and H. Plaintiffs admit that these materials are representative of all the offering materials that defendants issued. *See* Complaint at ¶ 35; Plaintiffs' Memo at 16–17.

Defendants have submitted with their motion a Joint Documentary Appendix containing all of the relevant offering material. However, consistent with the Second Circuit's opinion in *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989), the Court has not relied on materials which are not either attached as exhibits to or incorporated by reference in the complaint.

4. Alternatively, plaintiffs allege that the outside defendants recklessly failed to discover the fraudulent scheme. *Id.* at ¶¶ 45–51.

5. Plaintiffs also allege that the defendants concealed their fraudulent scheme at a 1984 meeting in New York City attended by representatives of Price and Paul Weiss at which the inside

defendant Jeffrey Feldman stated that "all was going well with the partnerships and that the investors should not be concerned about the condition of the Cralin organization." *See* Complaint at ¶¶ 54(f), 55(e), 56(e), 57(c).

Moreover, plaintiffs claim that the defendants issued false and misleading solicitation memoranda in 1985 whereby the defendants sought the consent from the limited partners to exchange their interests in a joint trading account for common stock of a corporation controlled by the individual defendants (the "Roll Up"). *Id.* at ¶¶ 5, 21–29.

6. To state a claim under section 10(b), plaintiffs must allege that they have relied to their detriment on a material misstatement or omission made in connection with the purchase or sale of a security and that the misstatement or omission was such as to support the inference of an intent to deceive or defraud. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Friedman v. Arizona World Nurseries Ltd.,* 730 F.Supp. 521, 529–30 (S.D.N.Y.1990).

plaintiffs have failed to allege, as they must, any facts supporting a rational inference that the representations were false and known to be so when made.

■ An unperformed promise can be actionable under Section 10(b) where the facts pleaded permit a rational inference that the defendant did not intend to or could not perform that promise at the time that it was made. *See Luce, supra,* 802 F.2d at 55; *Pross v. Katz,* 784 F.2d 455, 457–58 (2d Cir.1986). However, here there are no facts pleaded which rationally support the claim that defendant did not intend to operate the Cralin partnerships as broker-dealers, *cf., Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 573 (2d Cir.) (an admission), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982), or that the defendants knew that the partnerships could not in fact operate as broker-dealers. *See Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *see also Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). Indeed, at best all plaintiffs allege is a claim of breach of contract and not securities fraud, *i.e.* that the defendants promised that the partnerships would operate as broker-dealers and that the partnerships did in fact not so operate. *See Denny v. Barber,* 576 F.2d 465, 469–70 (2d Cir.1978) (pleading "fraud by hindsight" insufficient); *see also Luce, supra,* 802 F.2d at 54.[7]

Similarly, plaintiffs have not alleged any facts from which the Court can reasonably infer in what way inter-entity transactions were fraudulent. In fact, plaintiffs admit that some of these transfers "would otherwise have been proper if ... the Cralin ... defendants ... [operated] the partnerships as legitimate commodities broker-dealers." Complaint at ¶ 18; Plaintiffs' Memo at 4–5. Thus, this allegation is dependent on the failure of the partnerships to operate as broker-dealers, which the Court has found is a legally insufficient predicate for section 10(b) liability. *See Wexner, supra,* 902 F.2d at 173. Moreover, plaintiffs do not indicate which transfers were fraudulent or why or how they were fraudulent independent of the partnerships' failure to operate as broker-dealers.[8] The complaint is therefore clearly insufficient as to the insider defendants.

■ It follows that the complaint is necessarily insufficient as to the outside defendants as well. *See Denny, supra,* 576 F.2d at 470 n. 4. This is especially true since plaintiffs have failed to identify, as they must, who at either Price or Paul Weiss prepared the PPMs or in fact which PPM they prepared.[9] *See Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir.1987); *see also Ouaknine, supra,* 897 F.2d at 80; *DiVittorio,* 822 F.2d at 1249.[10]

In addition, the complaint nowhere alleges what facts either Price or Paul Weiss should have discovered that would have put them on notice of the alleged fraud. In the face of that failure, the fact that Price and Paul Weiss were involved in the preparation of the PPMs and tax opinions cannot support any rational inference of aiding and abetting a fraud. Nor do the allega-

---

7. Nor is *Ouaknine v. MacFarlane,* 897 F.2d 75 (2d Cir.1990) to the contrary. There, the court found that the scienter allegations were sufficient because they were adequately supported by concrete factual circumstances which if true would lead to the inescapable conclusion that the defendants did not intend to perform the promise when it was made. Here, however, plaintiffs complaint is deficient because it contains only conclusory allegations that the defendants never intended to perform their promises, *see* Complaint at ¶¶ 8(g), 18 & 39(a) ("partnerships never operated and were never intended to operate as broker-dealers"), without pleading any facts sufficient to support that conclusion.

8. Plaintiffs' allegations as to the 1985 Roll Up are also conclusory and violate Rule 9(b). Mere claims that entities were "fronts" or "shells" or that a transaction "had no legitimate business purpose or value," without more, does not satisfy plaintiffs' burden.

9. For example, plaintiffs allegation that Price prepared audited financial statements which were "included in *certain* of the *various* PPMs at issue here," *see* Complaint at ¶ 6(q), is clearly inadequate under Rule 9(b).

10. In a subsequent letter to the Court, plaintiffs identified the specific attorney at Paul Weiss responsible for the Cralin matters, but failed to identify any responsible parties at Price.

tions that Price and Paul Weiss had access to and extensively reviewed Cralin's business materials, *see* Complaint at ¶¶ 45–47, 49–51, support the conclusory assertion that these materials should have made the fraudulent nature of the partnerships apparent. *See Gross v. Diversified Mortgage Investors*, 438 F.Supp. 190, 195 (S.D.N.Y. 1977); *see also Devaney, supra*, 813 at 568; *Ross v. Warner*, 480 F.Supp. 268, 272 (S.D.N.Y.1979). The same is true with respect to the allegation that Price or Paul Weiss had an ongoing relationship with the Cralin defendants.[11] *See Dannenberg v. Dorison*, 603 F.Supp. 1238, 1241 (S.D.N.Y.1985).

In any event, the complaint is also deficient as a matter of law because it negates any inference of reasonable reliance. More specifically, with reference to the inter-entity transfers, plaintiffs concede that the PPMs disclosed those transfers and that they were aware that "they were disclosed in such a way that it was impossible for a non participant in the fraud" to discover the scheme. *See* Complaint at ¶¶ 18–19; Plaintiffs' Memo at 29. In short, plaintiffs acknowledge that they were aware that they did not have sufficient information on which to predicate an informed investment decision.

■ Moreover, a claim of fraud may not be predicated, as plaintiffs seek to do here, on an alleged reliance on the reputations of Price and Paul Weiss in the face of plaintiffs' conceded failure to seek more information.[12] This is especially true since the PPMs and the tax opinions specifically cautioned plaintiffs that the investment was speculative and that they should seek outside advice before investing. *Luce, supra*, 802 F.2d at 56 ("we are not inclined to impose liability on the basis of statements that clearly 'bespeak caution' ") (quotations omitted); *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168, 170–71 (S.D.N.Y. 1988).

From the foregoing it is clear that the complaint must be dismissed in its entirety.[13] Although leave to replead should be liberally granted, the Court finds that under the circumstances of this case plaintiffs have had a sufficient opportunity to plead fraud, especially since the Court expressed its willingness at Oral Argument to afford plaintiffs another opportunity to amend the complaint, but plaintiffs' counsel advised the Court that it had no other facts to plead. In light of these circumstances, the Court believes that it is appropriate to dismiss the complaint without leave to replead, except as indicated below.[14]

11. In any event, to the extent that plaintiffs contend that Price and Paul Weiss recklessly failed to discover the alleged fraud, they have not alleged any facts to support an inference that those defendants owed a fiduciary duty to them, which is required before an allegation of reckless conduct can support an inference of fraud. *See IIT v. Cornfeld*, 619 F.2d 909, 923–25 (2d Cir.1980); *Dannenberg, supra*, 603 F.Supp. at 1241.

12. The complaint in relevant part states that "[t]he potential investor was told to read the PPM presented to him and to consult with his accountant and/or attorney before investing. However, because of the extreme complexity of the purported business activities of the Cralin limited partnerships ... the proper evaluation of the investments was very difficult. When this inherent difficulty in evaluating the merits of the offering itself was coupled with the lack of the necessary PPMs and financial statements to evaluate the inter-entity transactions, *most if not all investors and their advisors eventually surrendered and invested on the reputations of Price and Paul Weiss.*" *See* Complaint at ¶ 14.

13. Plaintiffs' RICO and 12(2) claims which are dependent on the defective allegations of fraud must also be dismissed. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 18–19 & n. 14 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Finally, the pendent state-law claims should also be dismissed because all the federal claims have been dismissed, there is no diversity of citizenship and and there are no exceptional circumstances warranting retention of jurisdiction. *See generally Baylis v. Marriott Corp.*, 843 F.2d 658, 664–65 (2d Cir.1988).

14. Shortly after Oral Argument, plaintiffs submitted a copy of the recent indictment of two of the inside defendants, Jeffrey Feldman and Paul Foont to the Court. The indictment charges that these defendants violated the tax laws by engaging in prearranged and fraudulent transactions in government securities which created "false tax deductions based on fraudulent interest expenses in the first year, followed by fraudulent income in the second year." The indictment further alleges that the defendants issued fraudulent literature to investors falsely representing that "no transaction would be entered

## CONCLUSION

Accordingly, the defendants' motion to dismiss is granted and the Third Amended Complaint is dismissed with prejudice. The Clerk shall enter judgment for the defendants and close the above-captioned action.

It is SO ORDERED.

into ... unless there was an opportunity to make a pretax economic profit ... [and] that transactions would not be entered into solely for tax purposes." *See United States v. Feldman,* 731 F.Supp. 1189 (S.D.N.Y.1990). It is obvious that since the indictment does not concern any of the other defendants, it could add nothing to the allegations concerning those defendants and in any event the indictment cannot as a matter of law cure the deficiencies in plaintiffs' complaint. However, if plaintiffs have new facts to plead the Court will consider an appropriate application to amend the complaint based upon such newly obtained information. If they fail to do so by December 31, 1990, the dismissal shall be with prejudice as to all defendants.