**Christina D. PERRY–BEY, Plaintiff,**

v.

**CITY OF NORFOLK, VIRGINIA, Defendant.**

**Civil Action No. 2:08cv100.**

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 14, 2010.

Christina D. Perry–Bey, pro se.

Paul W. Jacobs, II, Melvin W. Ringer, for Defendant.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on Plaintiff's Motion for an Extension of Time to File an Amended Complaint (Docket No. 53), as well as Plaintiff's Motion for Preliminary Injunction (Docket No. 67).

### I. Procedural History

Plaintiff filed a *pro se* Complaint (Docket No. 6) on April 21, 2008 challenging Defendant's decision to amend the Norfolk Charter to provide for the Mayor of the City to be popularly elected rather than appointed by the members of the City Council from among its members. Plaintiff then filed an Amended Complaint (Docket No. 22) on June 11, 2008 containing the same allegations. Defendant filed a Motion to Dismiss (Docket No. 12) on May 14, 2008, and the Court held a hearing on such motion on September 17, 2008. Plaintiff appeared *pro se* at such hearing and the Norfolk Branch of the National Association for the Advancement of Colored People ("NAACP") appeared as amicus curiae. On January 15, 2009, the Court issued an Opinion and Order (Docket No. 51) in which it dismissed the Amended Complaint without prejudice to Plaintiff's ability to amend. The Court concluded by stating that:

> [s]hould Plaintiff desire to file a Second Amended Complaint intended to cure her allegations regarding standing and the defects in these claims, it must be filed with the Clerk of this Court by February 6, 2009. Failure to file such an Amended Complaint that remedies the defects outlined above will result in a dismissal with prejudice as to those claims dismissed without prejudice above. This means that if Plaintiff does not file an Amended Complaint, or files one that fails to remedy the defects outlined above, she will not be able to proceed on any of her claims that remain defective, and the case will be closed.

(Op. and Order 67–68, Docket No. 51)

No such Amended Complaint was filed by February 6, 2009. On February 10, 2009, Plaintiff submitted a Motion for Extension of Time to File Amended Complaint (Docket No. 53) in which she briefly stated that as a result of residents in her apartment misplacing the Order, she had only learned of it on February 6, 2009. She also claimed that "[a]dditional time is necessary to prepare at this time due to my pregnancy and family hardship." The Motion was not accompanied by a written brief, which was required by Local Rule 7(F) and was necessary for the Court to fully evaluate the merits of the Motion. The Court therefore issued an Order (Docket No. 55) on March 2, 2009 directing Plaintiff to file a brief explaining her Motion. Specifically, the Order contained the following language:

> given that Plaintiff is not represented by an attorney, this Court will allow Plaintiff fourteen (14) days from the date of this Order to file a brief explaining in detail why her pregnancy and family hardship prevented her from filing an amended complaint, and why her motion for an extension of time to file a second amended complaint should be granted.... Plaintiff is further WARNED that all of her claims will be dismissed with prejudice in the event that she fails

to file a brief explaining why her motion should be granted by March 16, 2009. *Id.* at 3.

On March 12, 2009, Plaintiff appealed the January 15, 2009 Opinion and Order granting Defendant's Motion to Dismiss and the March 2, 2009 Order directing Plaintiff to file a brief more fully explaining her reasons for failing to timely file an Amended Complaint. The United States Court of Appeals for the Fourth Circuit dismissed the appeal for lack of jurisdiction on October 14, 2009. *Perry–Bey v. City of Norfolk, Virginia,* 333 Fed.Appx. 733 (4th Cir.2009). In response, by Order (Docket No. 63) of October 22, 2009, the Court extended to November 4, 2009 the "Plaintiff's deadline for filing a brief explaining why her motion for an extension of time should be granted." [1] Once again, the Court warned Plaintiff in bold language that failure to do so would result in dismissal of her case.

Plaintiff submitted a brief (Docket No. 64) on October 28, 2009 in which she asserted that the Court's prior dismissal of Plaintiff's Amended Complaint was a "denial of equal protection and miscarriage of corrective justice." (Pl. Br. at 2) Perhaps in an effort to cure her Amended Complaint, Plaintiff made mention of her status as a registered voter and claimed that the City had acted with "malice and aforethought." *Id.* However, the brief made absolutely no mention of Plaintiff's Motion for Extension of Time, nor did it contain the explanation for Plaintiff's delay that was ordered by the Court. Plaintiff then filed a Motion for Preliminary Injunction on November 19, 2009, seeking to enjoin the Mayoral election scheduled for May, 2010. Then, on December 7, 2009, Plain-

tiff submitted to the Court a proposed "Motion for Judgment and Injunctive Relief" (Docket No. 80), which apparently was intended to be a Second Amended Complaint.

Mindful of the fact that Plaintiff was proceeding *pro se* in this voting rights case, the Court gave Plaintiff an additional opportunity to correct the deficiencies by ordering a January 6, 2010 hearing regarding the Motion for Extension of Time, as well as a hearing on Plaintiff's Motion for Preliminary Injunction. On December 30, 2009, Plaintiff filed a Motion to Continue (Docket No. 74) the January 6, 2010 hearing, which the Court denied by Order (Docket No. 76) of December 31, 2009. On January 6, 2010, the Court heard argument from Plaintiff and Defendant's counsel on the Motion for Extension of Time and the Motion for Preliminary Injunction.

**II. Motion for Extension of Time**

Fed.R.Civ.P. 6(b)(1) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The Court may find delay to be excusable neglect after considering all relevant circumstances, including "the danger of prejudice [to the non-moving party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The most important of these factors is the rea-

---

1. On November 5, 2009, the United States Court of Appeals for the Fourth Circuit issued a mandate directing that its opinion took effect on that date. (Docket No. 66) The Court's Order of October 22, 2009 therefore appears to have been premature. However, as both parties have submitted briefs, the Court proceeds to consideration of their submissions.

son for delay. *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir.1996). Furthermore, " '[e]xcusable neglect' is not easily demonstrated," but is found only in "extraordinary cases where injustice would otherwise result." *Id.*

### A. Reason for Delay

The Court begins by considering the reason for the delay. Plaintiff asserted at the hearing that the Court's Order and Opinion arrived at her residence, in which she then resided with her siblings and their families, but was misplaced by family members. Though Plaintiff vacillated when asked at the January 6, 2010 hearing to provide the details supporting her request, she ultimately stated that, as a result of such mail having been misplaced, she was unaware until her February 8, 2009 discovery of the mail that the Court had directed her to submit a Second Amended Complaint by February 6, 2009.

■■■ A *pro se* party's ignorance of an order may at times be excusable. *See e.g. Parker v. City of New York*, No. 05 Civ. 0101, 2009 WL 3754197 (S.D.N.Y. Nov. 6, 2009); *Iannace v. Rogers*, Civil No. 03–5973, 2006 WL 2038492 (D.N.J. July 18, 2006). *See also United States v. Stewart*, 312 Fed.Appx. 557, 558–59 (4th Cir.2009) (remanding to district court for consideration of whether defendant's ignorance of court order was excusable). The merits of Plaintiff's reason for delay could be much

stronger, but the Court finds, after oral examination of Plaintiff and considering the passage of almost a year between the events and her oral explanation, that she has provided an explanation of circumstances that would show that her failure to receive the mailed Opinion and Order was not "within her reasonable control." Therefore, this factor militates in favor of granting the requested extension.[2]

### B. Length of Delay and Prejudice

■■ Next, the Court considers the length of delay and its potential impact on judicial proceedings. After discovering the Order, Plaintiff promptly requested an extension of time. The four days between the deadline and the date the Court received the Motion for Extension did not create a lengthy delay. Such a short delay occurring before a trial date has even been scheduled is not likely to significantly prejudice Defendant. Furthermore, the Court does not find that this case has been characterized by missed deadlines.[3] While a review of the lengthy docket history reveals one other instance in which Plaintiff filed, two days before her deadline, a Motion for Extension of Time (Docket No. 16) to file a response to Defendant's Motion to Dismiss, this did not significantly impact the proceedings. Therefore, this factor militates in favor of granting the requested extension.

---

**2.** Plaintiff also states that she was pregnant at the time her Amended Complaint was due. However, as she has not alleged complications "so physically and mentally disabling" that she was unable to file her documents, the Court does not find this excuse tenable. *United States v. Ruth*, 753 F.Supp. 897, 898 (D.Kan.1990). *See also Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir.1984).

**3.** The Court does not view the March 16, 2009 and November 4, 2009 deadlines as having

been "missed." Plaintiff did not file a Second Amended Complaint by March 16, 2009 because she had appealed the Court's Order directing her to do so. The Court of Appeals ultimately ruled that it did not have jurisdiction over the appeal, but the Court does not view this instance as a missed deadline. Additionally, although Plaintiff's October 28, 2009 brief did not contain the information requested by the Court, it was filed by the November 4, 2009 deadline.

### C. Good Faith

■ The Court next considers whether Plaintiff acted in good faith. The Court finds the question of Plaintiff's good faith more troubling than the other factors discussed above. Plaintiff's February 10, 2009 Motion for an Extension of Time states that Plaintiff is seeking a continuance "Due to just discovering the Court's order today 02/06/09 In the apartment as result of other residents misplacing it and only knew about the order in the Virginian Pilot more time is required." At the January 6, 2010 hearing, Plaintiff first asserted that she found the Order two days *before* the deadline, on February 4, 2009, while cleaning. When confronted with her written Motion, she insisted that she had meant to say that she had found the Order two days *after* the deadline, on February 8, 2009–a position she maintained even after reviewing her written representation in the motion for extension. Defendant has also given conflicting statements as to whether the Motion was mailed or hand-delivered to the Court. Furthermore, in considering whether Plaintiff has acted in good faith, the Court notes that Plaintiff's October 28, 2009 brief (Docket No. 64) fails to comply with the Court's clear instruction to more fully explain her reasons for delay.

On the other hand, almost a year elapsed between the filing of Plaintiff's motion for extension and the hearing, and it is perhaps understandable that Plaintiff's memory of exact dates and circumstances falters. The Court also considers the fact that Plaintiff, who is not an attorney, was being questioned by a judge and was obviously nervous. Therefore, after hearing Plaintiff's explanation, the Court cannot conclude that the discrepancies evince a lack of good faith. Therefore, this factor cannot be said to militate against the requested extension of time.

### D. Excusable Neglect

Whether Plaintiff has shown excusable neglect is a close question that the Court has carefully weighed. On one side is the need to maintain the integrity of the judiciary and a process that is fair to Defendant. But on the other side is a reluctance to allow a *pro se* plaintiff's lack of legal sophistication to become a barrier to her pursuit of her constitutional claims. *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)(noting that "district courts should be especially hesitant to dismiss for procedural deficiencies where ... the failure is by a pro se litigant"); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(holding pro se litigants to less stringent pleading standards). The prosecution of this claim has indeed been lengthy and marked by a multiplicity of filings, but the Court is mindful of the difficulty Plaintiff faces in pursuing a voting rights case without the assistance of an attorney. Furthermore, the Court must base its decision on the proffered reason for the instant delay, not on general frustrations with Plaintiff's litigation style. *Stewart*, 312 Fed.Appx. at 558–59 (remanding denial of extension of time where district court addressed movant's previous actions, but not the reason offered for the delay in question).

Having considered all of the relevant circumstances, the Court finds that, on its face, this is a set of circumstances meriting relief. Therefore, in light of her reason for delay, the brevity of the delay, the lack of significant prejudice to Defendant, and the Plaintiff's plausible good faith, the Court finds injustice would result if it failed to grant the motion for extension. Accordingly, excusable neglect is present, and Plaintiff's motion for extension should be granted. However, the inquiry does not end there.

### E. Conditions on Amendment

The Court cannot deny that it looks with disfavor on Plaintiff's failure to respond to the Court's direct and clear orders to provide more information about her reason for delay. If Plaintiff had followed the Court's repeated instructions, the Court would not have had to schedule and obtain the requested information at a hearing, and Defendant would have been spared the effort of replying to an unresponsive brief and preparing to argue such motion for extension.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." It further provides that the "court should freely give leave when justice so requires." The Court gave Plaintiff leave to file a Second Amended Complaint in its January 15, 2009 Opinion and Order. However, Plaintiff missed the deadline for filing such a Second Amended Complaint and sought an extension of time to accomplish such a filing. Having found excusable neglect, the Court must therefore decide whether any conditions should be imposed on Plaintiff's ability to file a Second Amended Complaint.

■ The Court is mindful that it must exercise sound discretion in deciding whether to grant leave to amend in the current circumstances. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.,* 985 F.2d 164, 167–68 (4th Cir.1993). Furthermore, in deciding whether it should exercise its discretion to grant leave to amend a complaint, a district court should take into account any prejudice that the opposing party will suffer as a result of the amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). To avoid such prejudice, district courts are also permitted to balance opposing parties' interests by imposing reasonable condi-

tions on the applicant's leave to amend. *See Local 783 Allied Indus. Workers of Am. v. GE,* 471 F.2d 751, 756 (6th Cir. 1973). *See, e.g., Hayden v. Feldman,* 159 F.R.D. 452, 454–55 (S.D.N.Y.1995) (conditioning leave to amend on payment of attorney's fees); *Polycast Tech. Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 939 (S.D.N.Y.1989) (conditioning leave to amend on payment of fees for the preparation of a previously filed responsive pleading rendered moot by the amendment).

■ In this case, there would have been no need for Defendant to prepare its October 30, 2009 and December 30, 2009 briefs in opposition to Plaintiff's motion for extension (seeking leave to amend) had Plaintiff complied with the Court's March 2, 2009 and October 22, 2009 Orders (Docket Nos. 55 and 63) directing her to file the required brief explaining why her motion for extension of time should be granted. Furthermore, had Plaintiff complied with the Court's Orders, there would have been no need for Defendant to prepare for, and appear at, that portion of the January 6, 2010 hearing devoted to Plaintiff's motion for an extension of time to file a Second Amended Complaint.

The Court has considered the competing interests of the parties and the above-described prejudice to the Defendant of granting Plaintiff an extension to file her Second Amended Complaint. While the Court acknowledges the difficulties that have resulted from this pro se litigation, the Court must look beyond the Defendant's frustration to the substance. Therefore, Plaintiff's Motion for Extension of Time **WILL BE GRANTED UPON CONDITION** that Plaintiff reimburse Defendant for its costs and expenses associated with filing its October 30, 2009 and December 30, 2009 briefs addressing the requested extension of time, and preparing for and appearing at that portion of the

January 6, 2010 hearing dealing with such extension of time. The date for such reimbursement will be specified by the Court by subsequent order.

Defendant is **DIRECTED** to provide the Court, by January 22, 2010, a summary of its costs and attorneys' fees relating to such briefs, hearing preparation, and hearing attendance. The Court will then direct Plaintiff to pay Defendant a fair and reasonable amount by a date certain, as determined by the Court, or have her case dismissed with prejudice—meaning it could not be refiled. When this **CONDITION** is met by timely payment of such amount, the Court will **GRANT** Plaintiff's Motion for an Extension of Time to File an Amended Complaint.

### III. Motion for Preliminary Injunction

Plaintiff also requests a preliminary injunction to enjoin the City of Norfolk from conducting its upcoming mayoral election in May, which she claims "violate[s] the Voting Rights Act and dilute[s] minority voting strength … in violation of the Fourteenth Amendment to the United States Constitution and Title 42 U.S.C. Section 1983 of the Civil Rights Act." (Pl. Br. Mot. Pr. Inj. 1, Docket No. 68). Plaintiff also references Section 5 of the Voting Rights Act in her Motion. (Pl. Mot. Pr. Inj., Docket No. 67). Because the Court has conditionally granted Plaintiff's motion for an extension of time to amend her complaint, the preliminary injunction motion will be considered.

██ A preliminary injunction is an "extraordinary remedy" that is available only to parties who make a "clear showing that [they] are entitled to such relief." *Winter v. Natural Res. Def. Council,* —— U.S. ——, 129 S.Ct. 365, 375–76, 172 L.Ed.2d 249 (2008). Specifically, the plaintiff must show "1) that he is likely to succeed on the merits, 2) that he is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in his favor, and 4) that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346 (4th Cir.2009)(quoting *Winter,* 129 S.Ct. at 374). The Court will therefore consider whether Plaintiff has made such a showing with respect to each of her proffered bases for an injunction.

#### A. Section 2

██ In a claim based on Section 2 of the Voting Rights Act, Plaintiff must provide evidence to establish three preconditions: 1) that the minority group is sufficiently large and geographically compact to constitute a voting age majority in any particular district, 2) that the group is politically cohesive, and 3) that the majority votes sufficiently as a block to enable it, in the absence of special circumstances, to usually defeat the minority's preferred candidate. *Thornburg v. Gingles,* 478 U.S. 30, 50–51, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). If these preconditions are met, the Court must then determine under a totality of circumstances standard whether the challenged mayoral election is "not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 42 U.S.C.A. § 1973(b). Notwithstanding that statistical evidence is normally necessary to show that the *Gingles* preconditions have been met, Plaintiff presented no evidence at the January 6, 2010 hearing, or in her brief or argument, to support her motion for a preliminary injunction. Therefore, Plaintiff has not made a "clear showing" of a likelihood of success on her Section 2 claim.

#### B. Section 5

██ Section 5 of the Voting Rights Act grants a private party the right to bring

an action where a State covered by the Voting Rights Act institutes a new voting practice without complying with the approval procedures set out in Section 5. 42 U.S.C. § 1973c; *Allen v. Bd. of Elections*, 393 U.S. 544, 554–55, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). Plaintiff has presented no evidence or argument in support of a Section 5 claim. Given that the City of Norfolk has provided documentation (Mot. Dismiss App. J, Docket No. 13) that it submitted the mayoral voting plan to the United States Department of Justice in accordance with Section 5, the court certainly does not see a "clear showing" of Plaintiff's "likelihood of success."

### C. Fourteenth Amendment

To prevail on a Fourteenth Amendment challenge to a facially neutral voting law, Plaintiff must show that the voting plan has a discriminatory impact on a protected class and that it was "conceived or operated as [a] purposeful [device] to further racial discrimination." *Mobile v. Bolden*, 446 U.S. 55, 66, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980) (quoting *Whitcomb v. Chavis*, 403 U.S. 124, 149, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971)). Plaintiff has offered no evidence to the Court to this effect, and has therefore not made a "clear showing" of a likelihood of success.

### D. 42 U.S.C. § 1983

The Court has previously explained that Plaintiff must state a basis for a 42 U.S.C. § 1983 claim. (Op. and Order 35–38, Docket No. 51) The statute, which authorizes a court to grant relief when a party's federally protected rights have been violated by a state or local official or other person who acted under color of state law, does not itself create any rights. 42 U.S.C. § 1983. However, Plaintiff has not asserted which right she seeks to enforce under the statute, let alone facts showing that she is likely to succeed on her claim. Therefore, she has made no "clear show-

ing" of likelihood of success on such a claim.

Plaintiff's brief (Docket No. 68) contains no statement of fact or argument supporting the likelihood of success on any of her claims. At the hearing, Plaintiff declined to present evidence, instead asking the Court to rely on the unsatisfactory statements in her brief. Rather than a "clear showing" that she is likely to succeed on the merits of any claim, Plaintiff has made no showing at all. Therefore, because Plaintiff has not met her burden to show "likelihood of success on the merits", there is no need to consider the remaining prongs of the *Winters* test or the appropriateness of a preliminary injunction that changes the status quo.

The Motion for Preliminary Injunction (Docket No. 67) is therefore **DENIED.**

In conclusion, Plaintiff's Motion for Extension of Time (Docket No. 53) will be **GRANTED UPON CONDITION** that she makes payment of Defendant's reasonable costs and attorneys' fees. Defendant is **DIRECTED** to provide the Court, by January 22, 2010 a summary of its costs and attorneys' fees, as described above. Plaintiff's Motion for Preliminary Injunction (Docket No. 67) is **DENIED.**

The Clerk shall electronically forward a copy of this Order to all counsel of record in this matter and mail Plaintiff's copy to her address of record.

It is SO **ORDERED.**